```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

NICHOLAS LESLIE, A97-519-269,

                Petitioner,

  -vs-                            **No.11-CV-6411(MAT)**
                                      **DECISION AND ORDER**

ERIC H. HOLDER, Attorney General of the United States; MICHAEL PHILIPS, Field Office Director for Detention and Removal, Buffalo Field Office, Bureau of Immigration and Customs Enforcement; Department of Homeland Security; and TODD TRYON, Facility Director, Buffalo Federal Detention Facility,

                Respondents.

**I.   Introduction**

Nicholas Leslie ("Leslie" or "Petitioner"), an alien under a final order of removal from the United States, has filed this, his fourth pro se habeas corpus petition in this Court.[1] Leslie again challenges his detention in the custody of the Department of Homeland Security ("DHS") while DHS continues its efforts to secure a travel document for his removal from the United States. Leslie contends that his removal is not reasonably foreseeable and that

---

[1] Each of Leslie's prior habeas petitions was dismissed upon findings that the delay in processing his removal has been caused by his own refusal to cooperate and his false claims of United States citizenship. See Leslie v. Mule, et. al., No. 6:07-CV-6354 (W.D.N.Y. May 5, 2010) (Telesca, D.J.), Leslie v. Herrion, No. 6:08-CV-6301, 677 F. Supp. 2d 651 (W.D.N.Y. 2010) (Larimer, D.J.); Leslie v. Holder, et. al., No. 6:10-CV-6513 (W.D.N.Y.) (Larimer, D.J.).

his continued detention violates his due process. Respondents argue that his continued detention in DHS custody of is in accordance with the Immigration and Nationality Act ("INA"), given that the INA allows extended detention where, as here, the alien's obdurate refusal to cooperate with DHS is the cause of the delay in effectuating the alien's removal.

## II.  Factual Background and Procedural History

Leslie is a native and citizen of Jamaica who entered the United States at or near Miami, Florida on April 24, 2000, under a H-2B non-immigrant visa. He was convicted in the Supreme Court of the State of New York, County of New York on March 9, 2005, of Criminal Sale of a Controlled Substance (cocaine) in violation of New York Penal Law § 220.30(1), and sentenced to a term of incarceration of three to nine years.

While he was incarcerated, DHS served him with a Notice to Appear on March 28, 2006, charging him with being subject to removal from the United States as an alien present in the United States who has remained in the United States for a time longer than permitted. See INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). DHS served Additional Charges of Inadmissibility/Deportability on Leslie, charging him with being subject to removal pursuant to INA § 237(a)(2)(A)(iii)), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony; and pursuant to INA § 237(a)(2)(B)(I), 8 U.S.C.

§ 1227(a)(2)(B)(I), as an alien convicted of a controlled substance offense.

Upon his release from custody by the New York State Department of Correctional Services and Community Supervision on March 20, 2006, Leslie was received into DHS custody and placed in removal proceedings at the Buffalo Federal Detention Facility in Batavia, New York.

On May 30, 2006, during removal proceedings, Leslie provided a sworn statement to a deportation officer in which he claimed to have been born in the U.S. Virgin Islands, thereby making him a United States citizen by birth. However, DHS ascertained from from the U.S. Virgin Islands, Office of Vital Statistics Records that no record of birth could be found for Leslie, Nicholas, a/k/a Paul Thomas (DOB: xx/xx/1972), in either St. Thomas or St. John. Accordingly, on October 30, 2006, an immigration judge ordered Leslie deported to Jamaica. The Board of Immigration Appeals dismissed Leslie's appeal on February 12, 2007.

After Leslie refused to complete the necessary application to obtain a travel document from Jamaica on February 20, 2007, DHS issued a Form I-229, Warning for Failure to Depart, along with an instruction sheet listing actions that Leslie was required to complete within 30 days to assist DHS in obtaining a travel document for his removal. Leslie was advised that a failure to comply or to provide sufficient evidence of his inability to comply

could result in the extension of the removal period and subject him to further detention.

Further investigation by DHS revealed that Leslie had been born in Jamaica and had been issued a H-2B nonimmigrant visa in Kingston, Jamaica, based upon his presentation of Jamaican passport number 1963071. Accordingly, on February 21, 2007, DHS sent a presentation packet to the Consulate General of Jamaica in New York, New York, requesting that a travel document be issued for Leslie's removal. DHS was informed that the Consulate was unable, at that time, to process or issue a travel document for Leslie due to the fact that Leslie claimed U.S. citizenship and refused to complete the Jamaican application for issuance of the travel document. The Jamaican Consulate further noted DHS that based upon Leslie's claim of U.S. citizenship, it needed a birth certificate from Leslie in order to issue a travel document.

In order to conclusively establish Leslie's true citizenship status, DHS requested the assistance of the American Embassy in Jamaica. On March 27, 2007, DHS received a document from a foreign investigator assigned to the American Embassy which identified Leslie as a Jamaican national. This document was issued by the Jamaican "Ministry of Labour Overseas Employment" and contained biographical information, a photograph of Leslie, and his fingerprints. DHS also obtained a copy of Leslie's application for a Social Security card from the United States Social Security

Administration which revealed that Leslie had presented a Jamaican passport and I-94 form for his application.

On March 29, 2007, April 20, 2007, and May 23, 2007, DHS served Leslie with additional Warnings for Failure to Depart.

On May 16, 2007, a fingerprint technician employed by the New York State Police compared a photocopy of a fingerprint card of Nicholas Leslie taken at the Buffalo Federal Detention Facility with a photocopy of a Ministry of Labour Overseas Employment document bearing the name Nicholas Leslie which contained two fingerprint impressions. The technician determined that the fingerprints on both documents were made by the same individual.

On July 20, 2007, Leslie filed in this Court a petition for writ of habeas corpus in which he challenged his continued detention in DHS custody. See Leslie v. Mule, et al., No. 6:07-CV-6354(MAT)(W.D.N.Y.). This Court denied the petition, and the Second Circuit subsequently affirmed the denial in a summary order dated August 17, 2011, finding that "all of the evidence indicates that the delay in processing Leslie's removal has been caused by his own refusal to cooperate and his false claims of United States Citizenship." Dkt. #70 at p. 2, in Leslie v. Mule, et al., No. 10-2115-pr (2d Cir. Aug. 17, 2011) (summary order).

On August 15, 2007, the Government filed a criminal complaint against Leslie in this Court charging him with violating Title 8,

United States Code, Section 1253(a)(1)(C) and Title 18, United States Code, Section 1001(a)(2). See United States v. Leslie, No. 1:07-MJ-0085 (W.D.N.Y.) (Schroeder, M.J.), merged with 07-CR-0627 (W.D.N.Y. Nov. 5, 2007). The Government moved for detention, and the Court remanded Leslie to the custody of the United States Marshals Service on August 15, 2007.

On November 5, 2007, Leslie pleaded guilty in this Court to a one count felony information charging him, pursuant to Title 18, United States Code, Section 1001(a)(2), with making a false statement, in that Leslie knowingly and willfully made materially false, fraudulent, and fictitious statements and representations to a DHS employee indicating that he was a citizen of the United States, when in truth and in fact, he is a citizen of Jamaica. Leslie was sentenced on December 19, 2007, to time served and a three year term of supervised release. That day, he was received into DHS custody. He is currently held at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal from the United States.

In the meantime, DHS has continued to try to effectuate Leslie's removal. On January 28, 2008, DHS sent a presentation packet to the Consulate General of Jamaica in New York City to obtain a travel document for Leslie's removal.

On February 19, 2008, Leslie was issued another I-229, Warning for Failure to Depart.

In accordance with immigration regulations, DHS reviewed Leslie's custody status in March 2008. On March 20, 2008, Leslie was notified that DHS determined to continue his detention, finding that he would be a threat to the community and a flight risk if released from custody.

During an interview on April 22, 2008, with a consular representative, Leslie again falsely claimed to be a citizen of the U.S. Virgin Islands. Thus, the Jamaican Consulate was prevented from issuing a travel document for Leslie.

On May 16, 2008, based upon Leslie's false claim to the Jamaican Consulate that he was a citizen of the United States, DHS served Leslie with a Form I-229, Warning for Failure to Depart, along with an instruction sheet listing actions that Leslie was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.

On June 24, 2008, Leslie was issued another I-229, Warning for Failure to Depart. DHS served Leslie with a Notice of Failure to Comply pursuant to 8 C.F.R. 241.4(g), on July 9, 2008, formally advising him, among other things, that the removal period was extended in his case.

DHS served Leslie with additional Warnings for Failure to Depart on August 8, 2008; September 3, 2008; October 24, 2008; November 26, 2008; December 26, 2008; January 26, 2009; February 26, 2009; March 26, 2009; April 24, 2009; May 22, 2009; June 17,

2009; July 14, 2009; August 13, 2009; September 11, 2009; October 6, 2009; November 5, 2009; and December 3, 2009. Leslie was served with additional Notices of Failure to Comply on October 23, 2008; January 26, 2009; April 27, 2009; July 24, 2009; and October 21, 2009.

On June 24, 2008, Leslie informed DHS that he would comply with his obligation to assist in obtaining a travel document for his removal from the United States. However, Respondents aver, Leslie has provided no such assistance.

Leslie filed in this Court a second petition for writ of habeas corpus on July 8, 2008. See Leslie v. Herrion, No. 6:08-CV-6301L(W.D.N.Y.). The Court (Larimer, D.J.) denied the petition on January 6, 2010, noting that it was "the affirmative obligation of an alien to make application in good faith for travel and other documents necessary to effect his departure." Leslie v. Herrion, 677 F. Supp.2d 651, 653 (W.D.N.Y. 2010).

On August 29, 2008, Leslie was re-interviewed by a consular representative, and refused to provide additional information for purposes of verifying his identity.

On October 17, 2008, Leslie advised DHS that he had submitted a letter to the Jamaican Consulate as evidence that he had provided assistance in regards to the issuance of a travel document for his removal. However, DHS learned a week later that the Consulate had not received any correspondence from Leslie. The representative

further stated that Leslie must provide better information in support of a travel document.

On December 30, 2008, a consular representative notified DHS that as a result of the conflicting information provided by Leslie in previous interviews, Leslie was required to provide more information from local authorities in Jamaica. On January 22, 2009, Leslie was again interviewed by a consular representative and refused cooperate with their efforts to obtain a travel document.

DHS continued to contact the representative of the Jamaican Consulate regarding the status of Leslie's travel document throughout the period from February 12, 2009; and November 24, 2009. On December 21, 2009, a consular representative requested that DHS provide a travel itinerary for Leslie's removal from the United States. Thereafter, DHS made travel arrangements for Leslie and scheduled his removal for January 21, 2010.

On January 20, 2010, DHS cancelled the travel arrangements for Leslie's removal after DHS was notified by a consular representative that more time was needed to verify Leslie's citizenship and that Leslie had not provided the Consulate with requested documents and information.

DHS served Leslie with additional Warnings for Failure to Depart on January 28, 2010; February 26, 2010; March 25, 2010; April 26, 2010; May 26, 2010; June 25, 2010; July 22, 2010; August 20, 2010; and September 17, 2010. DHS served Leslie with

additional Notices of Failure to Comply on January, 29, 2010; April 27, 2010; and July 23, 2010.

Between March 11, 2010, and October 6, 2010, DHS continued to contact the Jamaican Consulate regarding the status of Leslie's travel document. Due to Leslie's continued failure to cooperate and his failure to provide information needed to verify his identity, DHS's efforts to obtain a travel document for him are at a standstill.

In the instant petition, Leslie asserts that the presumptively reasonable removal period ended on April 30, 2007, and that his continued detention violates due process principles as explicated in Zadvydas v. Davis, 533 U.S. 678 (2001).

Respondents explain that Leslie is in failure to comply status. As such, they argue, Leslie's removal period has been extended, and DHS is not obligated to complete its otherwise scheduled custody reviews until Leslie has demonstrated compliance with the statutory obligations. See 8 C.F.R. § 241.4(g)(5)(iii). DHS's expectation is that Leslie will be removed to his native country of Jamaica within a reasonable time, as soon as Leslie begins to cooperate with the efforts to secure travel documents for his removal.

Respondents assert that there is no institutional barrier to Leslie's removal to Jamaican, noting that in the past three fiscal years DHS has successfully repatriated 4,782 aliens to Jamaica.

Statistical reports issued by DHS show that in fiscal year ("FY") 2007, a total of 1,490 aliens were repatriated to Jamaica, while in FY2008, 1,641 aliens were repatriated to Jamaica; and in FY2009, 1,651 aliens were repatriated to Jamaica. See Declaration of Donald Vaccaro("Vaccaro Decl."), ¶ 52.

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed without prejudice.

## III. Discussion

### A.   INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C)

The authority to detain aliens after the issuance of a final removal order is INA § 241, 8 U.S.C. § 1231. Under this provision, the Attorney General is afforded a 90-day period to accomplish an alien's removal from the United States following the entry of a final order of deportation or removal. See INA § 241(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(1)(A)-(B). Detention of the alien is required during the removal period. See INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").

For aliens who, like Leslie, have been convicted of criminal offenses, the Attorney General may continue to detain the alien even after the expiration of the 90-day removal period: "An alien ordered removed who is . . . removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with

the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." INA § 241(a)(6), 8 U.S.C. § 1231(a)(6); see also 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), & 1227(a)(4). The removal period also may be suspended if the alien fails to cooperate with the Attorney General's efforts to removal him. See 8 U.S.C. § 1231(a)(1)(C) ("Suspension of period") ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."). The INA imposes an affirmative obligation on an alien "to make timely application in good faith for travel and other documents necessary to [his] departure," and imposes criminal penalties for a willful failure to do so. See INA § 243(a), 8 U.S.C. § 1253(a). See also 8 C.F.R. § 241.4(g) (tracking language of 8 U.S.C. § 1231(a)(2)(C) and adding that "detention provisions of section 241(a)(2) of the Act will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens.").

The immigration regulations at 8 C.F.R. § 241.4(g) provide in relevant part as follows:

> [T]he removal period is extended under section 241(a)(1)(C) of the Act if the alien fails or refuses to make timely application in good faith for a travel or other documents necessary to the alien's departure or

>
> conspires or acts to prevent the alien's removal subject to an order of removal . . . .
>
> The Service shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, if the removal period has not yet expired, and that the Service is not obligated to complete its scheduled custody reviews under this section until the alien has demonstrated compliance with the statutory obligations . . . .
>
> The fact that the Service does not provide a Notice of Failure to Comply, within the 90-day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct.

8 C.F.R. § 241.4 (g)(1)(i)(C)(ii) and (g)(5)(iv).

### B. Application to Leslie's Case

There is no dispute that Leslie's continued detention is pursuant to INA §, 8 U.S.C. § 1231, as he is an alien under a final order of removal. Pursuant to 8 U.S.C. § 1231(a)(1)(B)(iii),[2] a 90-day statutory removal period commenced on December 19, 2007,[3] when Leslie was received into DHS custody upon his release from the

---

[2] Title 8 U.S.C., § 1231(a)(1)(B) provides that the removal period begins on the latest of the following dates:
> (i) The date the order of removal becomes administratively final;
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C., § 1231(a)(1)(B)

[3] Petitioner's assertions regarding the commencement of the ninety-day statutory removal period are incorrect, and he does not provide his reasoning or statutory authority for his calculations.

custody of the United States Marshal Service where he had been detained other than under an immigration process (i.e., he was detained by virtue of his federal criminal conviction).

Clearly, more than ninety days have elapsed since December 19, 2007. Respondent argues that the statutory period of removal has been suspended, and effectively extended, due to Leslie's refusal to make timely application in good faith for travel or other documents necessary for his departure and because Leslie has conspired and acted to prevent his removal from the United States, thereby rendering his continued custody lawful. See 8 U.S.C. § 1231(a)(1)(C).

As noted above, Leslie was criminally prosecuted in this Court pursuant to 8 U.S.C. § 1253(a)(1)(C) and 18 U.S.C. § 1001(a)(2) for his obstruction of DHS efforts to remove him from the United States in accordance with the order of removal. On November 5, 2007, when Leslie pled guilty to making a false statement pursuant to 8 U.S.C. § 1001(a)(2), he admitted facts showing his refusal to make timely a application in good faith for travel or other documents necessary for his departure as well as his conspiratorial actions designed to prevent his removal. In the plea agreement, signed on November 5, 2007, Leslie specifically admitted that he falsely and knowingly stated that he was born in the U.S. Virgin Islands in order to avoid deportation from this country.

During an interview with the Jamaican Consulate General on April 22, 2008, Leslie again made a false statement claiming to be a citizen of the U.S. Virgin Islands, which has prevented the issuance of a travel document.

As a result of Leslie's actions, on 44 separate occasions between February 20, 2007, and August 22, 2011, DHS served Leslie with a Warning for Failure to Depart, including 44 separate instruction sheets listing items that Leslie was to provide within 30 days. The instruction sheets also advised Leslie that his failure to comply or provide sufficient evidence of his inability to comply could result in the extension of the removal period and subject him to further detention.

Between July 2008, and July 2011, 13 separate Notices of Failure to Comply were served upon Leslie. Leslie has provided no evidence that he responded to the instruction sheets by providing any of the items requested of him. Thus, pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), suspension of the statutory removal period is warranted. Moreover, Further, Leslie has offered no credible evidence to refute DHS's assertion that Leslie can be removed in the reasonably foreseeable future *if* he cooperates and provides the information as he is statutorily required to do. In sum, Leslie's continued detention under INA § 241(a)(1)(C) is lawful, and there is no basis for granting relief under 28 U.S.C. § 2241.

**IV. Conclusion**

For the foregoing reasons, Nicholas Leslie's § 2241 petition is denied without prejudice, with leave to re-file should it subsequently appear that suspension of the removal is no longer warranted and that there is no significant likelihood of his removal in the reasonably foreseeable future.

Because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 21, 2012